# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ADRIAN MILLER, | : |
| Petitioner, | : Civ. No. 15-8428 (BRM) |
| v. | : |
| ROBERT CHETIRKIN, et al., | : **OPINION** |
| Respondents. | : |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by Petitioner, Adrian Miller, a state prisoner proceeding *pro se*. Petitioner was convicted in 2008 by a jury of first-degree armed robbery, second-degree possession of a weapon for an unlawful purpose, fourth-degree aggravated assault, third-degree unlawful possession of a weapon, and second-degree certain persons not to have weapons. He is currently serving a thirty-year sentence with an eighty-five percent period of parole ineligibility pursuant to New Jersey's No Early Release Act ("NERA"). N.J. Stat. Ann. § 2C:43-7.2. Petitioner raises several claims in the instant Petition. Having reviewed the petition and the submissions filed in connection therewith, for the reasons set forth below and for good cause appearing, the Petition is denied and a certificate of appealability shall not issue.

**I.   BACKGROUND**

This Court, affording the state court's factual determinations the appropriate deference, *see* 28 U.S.C. § 2254(e)(1)[1], will recount relevant portions of the New Jersey Superior Court, Appellate Division's recitation of facts:

---
[1] Pursuant to 28 U.S.C. § 2254(e)(1):

Wonil Pak was the owner of the Super Discount Store located at 700 Main Street in Asbury Park. He was working behind the counter on the evening of August 15, 2006, when a man, later identified as defendant, walked in at approximately 6:00 p.m.

Defendant picked up a hand phone and gave Pak a ten dollar bill to pay for it. When Pak handed defendant his change, defendant pulled a gun out of his pocket and pointed it at Pak, demanding money. Pak handed some cash to defendant, who demanded more. Defendant then jumped onto the cashier counter and attempted to take money from the cash register. Pak hit defendant's hand, causing defendant's gun to fall to the floor. A struggle between Pak and defendant ensued. During this struggle, defendant grabbed Pak's neck, and Pak proceeded to bite defendant's hand. Both men fell to the floor in front of the counter and the gun went off "two or three times." Following the discharge of the weapon, defendant fled. Pak then pressed a panic alarm button, alerting the police to the scene.

Officer Charles Grays of the Asbury Park Police Department responded to the alert, arriving on the scene within two to three minutes. Grays observed three shell casings on the floor of the store as well as a black baseball cap, a pair of sunglasses and a gray and white Nike sneaker. Pak indicated that these items were not in his store before defendant's arrival.

A witness, Whitney Valentin, walked into the store while the robbery was in progress. Although Valentin signed a statement indicating that he was present during the robbery and describing defendant, he later denied remembering any events of that night or signing any statement to that effect.

Pak was subsequently escorted to police headquarters, where he gave a videotaped statement. Pak described the man as "a little bit taller [than him], and a little bit skinny, as was black male." In his statement, Pak identified the assailant as wearing a dark colored short-sleeved shirt. While testifying at trial, Pak corroborated his earlier description but indicated that defendant was wearing dark clothing and a cap.

---

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

While Pak was at police headquarters providing a formal statement to officers, Wanda Lopez, residing a short distance from Pak's store, heard a knocking at her door at 6:30 p.m. She called her husband, Raymond Lopez, who immediately returned home. Upon arriving home, Mr. Lopez observed a black male laying in his back yard, appearing hurt. He recognized the man as defendant, a friend of his son's.[2] Mr. Lopez called 9-1-1.

Officer Tyrone McAllister of the Asbury Park Police Department responded to Mr. Lopez's call and arrived at the Lopez residence at approximately 6:51 p.m. Officer McAllister observed defendant, whom he described as a black male, in the back yard, wearing black sweatpants and white socks but no shoes and no shirt. A gray and white Nike sneaker was found on the ground five or six feet from defendant, and a black t-shirt was found at the bottom of the Lopez's pool. Officer McAllister observed defendant had a gunshot wound to his abdomen and called the paramedics.

Defendant was transported to the Jersey Shore Medical Center where he was treated for a gunshot wound and eventually identified himself as Adrian Miller, after having originally identified himself as Michael Smith.

The following day, August 16, 2006, Detective Arthur Wisliceny of the Monmouth County Prosecutor's Office reported to the Medical Center to take photographs of defendant's injuries. Detective Wisliceny took several photographs of defendant's body, including his left hand, which he observed had sustained "an injury of some type."

At trial, the State proffered George Chin, a criminalistics expert with the New Jersey State Police, who had examined the sneaker retrieved from Pak's store and the sneaker found near defendant at the Lopez residence. Chin concluded "they basically comprised a pair." Both shoes were a size 12, white Nike Air Max sneakers. The sneaker found at the store was a right shoe, while the sneaker found next to defendant was for the left foot. Mr. Chin stated that both sneakers displayed similar "wear and tear."

Swabs of epithelial cells taken from the sweatband of the cap found in the store and the sleeve of the t-shirt found in the Lopez's pool

---

[2] "[Mr. Lopez]'s son and defendant had previously been convicted as codefendants in a prior crime. At defendant's request, the State agreed to limit its examination of [Mr. Lopez] to exclude this conviction from the trial record." *State v. Miller,* Docket No. A-3048-13T2, 2015 WL 4094448 (N.J. Super. Ct. App. Div. July 8, 2015).

> yielded matching DNA, which was defendant's DNA. The probability of a random match for defendant's DNA profile among black males was estimated to be one in 114 quadrillion. No fingerprints were obtained from the gun found at the store as the "type of surface is not conducive to . . . fingerprints. It is very textured." Fingerprints from the sunglasses were also unobtainable. Officer James Ryan, a ballistics expert, was not able to conclusively show that that the fragmented cartridges were fired from the gun found at the scene. However, he stated that in his opinion three shell casings were fired from that gun.

*State v. Miller*, Docket No. A-0543-08T4, 2010 WL 114387, at *1–2 (N.J. Super. Ct. App. Div. Jan. 14, 2010).

On the second day of trial, February 27, 2008, the State called Raymond Lopez to testify. After his testimony, Mr. Lopez informed defense counsel, for the first time, that on the night of the crime Petitioner had told Mr. Lopez, "they shot me," and "they was fighting and they shot me." (ECF No. 10-6 at 58.) When defense counsel relayed this newly obtained information to the court, the trial judge determined that a hearing would need to be held out of the presence of the jury, to determine the admissibility of the alleged statements. (*See* ECF No. 10-6 at 59.) However, after a brief recess defense counsel ultimately declined to pursue an admissibility hearing and Mr. Lopez was never asked about the alleged statements by Petitioner. (*See* ECF No. 10-6 at 60.)

On March 5, 2008, following the five-day trial, Petitioner was found guilty of first-degree armed robbery, N.J. Stat. Ann. § 2C:15-1; second-degree possession of a weapon for an unlawful purpose, N.J. Stat. Ann. § 2c:39-4a; fourth-degree aggravated assault N.J. Stat. Ann. § 2C:12-1b(4); and third-degree unlawful possession of a weapon, N.J. Stat. Ann. § 2C:39-5b. (*See* ECF No. 10-7 at 102-07.) The same jury found also found Petitioner guilty of the certain persons not to have a weapon charge, N.J. Stat. Ann. § 2C:39-7b(1) at a bifurcated trial held later that same day. (*See id.* at 134-36.)

On May 16, 2008, the trial court granted the State's motion for a mandatory extended term sentence on the count of the first-degree armed robbery. (*See* ECF No. 10-8 at 3-7.) Petitioner was sentenced to an aggregate custodial term of thirty years with a mandatory period of parole ineligibility equal to eighty-five percent of the maximum term imposed, pursuant to New Jersey's No Early Release Act ("NERA"). N.J. Stat. Ann. § 2C:43-7.2.

On September 24, 2008, Petitioner appealed to the Superior Court of New Jersey, Appellate Division. (*See* ECF No. 10-9 at 26.) The Appellate Division affirmed both his conviction and sentence in an unpublished opinion issued on January 14, 2010. (*See State v. Miller*, Docket No. A-0543-08T4, 2010 WL 114387 (N.J. Super. Ct. App. Div. Jan. 14, 2010)). Petitioner appealed to the New Jersey Supreme Court but was denied certification. *See State v. Miller*, 12 A.3d 211 (N.J. 2011).

In 2011, Petitioner filed a timely petition for Post-Conviction Relief ("PCR") in the Superior Court of New Jersey, Law Division (Criminal), Monmouth County. (*See* ECF No. 10-20 at 18-21.) On January 27, 2012, Petitioner appeared before the Honorable Anthony J. Mellaci, Jr., J.S.C., and requested that his PCR petition be withdrawn without prejudice, as Petitioner felt that he was not prepared to go forward at that time. (*See id.*) Judge Mellaci granted Petitioner's motion to withdraw his petition for PCR without prejudice. (*See* ECF No. 10-16.)

On March 28, 2012, Petitioner filed a second petition for post-conviction relief in the Superior Court of New Jersey, Law Division (Criminal), Monmouth County, (*See* ECF No. 10-17), and an amended PCR petition on November 29, 2012. (*See* ECF No. 10-18.) The Superior Court denied the PCR petition on August 30, 2012. (*See* ECF No. 10-23; ECF No. 10-24.) Petitioner appealed, and on July 8, 2015, the Appellate Division affirmed the denial of the PCR petition. *See State v. Miller*, Docket No. A-3048-13T2, 2015 WL 4094448 (N.J. Super. Ct. App.

Div. July 8, 2015). Petitioner appealed to the New Jersey Supreme Court, but on October 29, 2015, the court denied his petition for certification. *See State v. Miller*, 124 A.3d 240 (N.J. 2015). Petitioner subsequently filed the instant habeas petition with this Court, which was signed on November 23, 2015. (*See* ECF No. 1 at 17.)

The petition raises six claims:

1. The prosecutor violated Petitioner's Fifth Amendment right to remain silent when the prosecutor, during closing arguments, alluded to Petitioner's failure to take the stand at trial;

2. Appellate counsel was ineffective for failing to raise the claim on direct appeal that the State prosecutor, during summation, repeatedly violated Petitioner's Fifth Amendment right not to testify;

3. PCR counsel was ineffective for telling the PCR judge that Petitioner was not arguing an issue Petitioner had listed in his pro se petition;

4. PCR appellate counsel was ineffective for failing to raise on appeal the ineffectiveness of PCR trial counsel;

5. Trial counsel was ineffective for failing to elicit exculpatory testimony from witness Raymond Lopez; and

6. Trial counsel was ineffective for failing to investigate Petitioner's case prior to trial.

Respondent was ordered to file an answer to the habeas petition. (*See* ECF No. 4.) Respondent argues that Petitioner's claims regarding ineffectiveness of PCR counsel and PCR appellate counsel are not cognizable on a petition for federal habeas relief, and that Petitioner's remaining claims lack merit. (*See* ECF No. 10.)

## II.  LEGAL STANDARD

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim

presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *see also Parker v. Matthews*, 567 U.S. 37, 40–41 (2012). Under the statute, as amended by the Anti–Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts, *see Renico v. Lett*, 559 U.S. 766, 772–73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1)–(2).

Federal law is clearly established for these purposes where it is expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, ––– U.S. ––––, 135 S. Ct. 1372, 1376 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1) (alteration in original).

In addition to the above requirements, a federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To do so, a petitioner must "'fairly present' all federal claims to the

highest state court before bringing them in federal court." *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (citing *Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 369 (3d Cir. 2002)). This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'" *Id.* (citing *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)).

Even when a petitioner properly exhausts a claim, a federal court may not grant habeas relief if the state court's decision rests on a violation of a state procedural rule. *See Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004). This procedural bar applies only when the state rule is "independent of the federal question [presented] and adequate to support the judgment." *Leyva*, 504 F.3d at 365–66 (citing *Nara v. Frank*, 488 F.3d 187, 196, 199 (3d Cir. 2007); *see also Gray v. Netherland*, 518 U.S. 152 (1996); *see also Coleman v. Thompson*, 501 U.S. 722 (1991)). If a federal court determines that a claim has been defaulted, it may excuse the default only upon a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Leyva*, 504 F.3d at 366 (citing *Lines v. Larkins*, 208 F.3d 153, 166 (3d Cir. 2000)).

To the extent that a petitioner's constitutional claims are unexhausted or procedurally defaulted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005).

### III. DECISION

#### A. Prosecutor's Infringement on Petitioner's Fifth Amendment Right

In Petitioner's first claim, he argues that the prosecutor violated his Fifth Amendment right to remain silent. Specifically, Petitioner asserts that, "[d]uring summation, the prosecutor repeatedly alluded to defendant's failure to take the stand and present his exculpatory story upon

arrest." (ECF No. 5 at 5.) Petitioner first raised this argument in his PCR proceedings and pointed to the following portions of the prosecutor's summation as demonstrative:

> The testimony is -- I'm sorry, the position, the summation by [defense counsel] is that under the alternative theory, which I submit to you there's no – all the evidence that you have before you there's nothing to support that.
>
> . . .
>
> And that's exactly where this alternative theory should go and that's out the window, because I submit to you that there's nothing factually or by way of evidence to support that.
>
> . . .
>
> What's [defense counsel] saying, that his client walked in, gets hot, somehow loses a hat over here, somehow loses a sneaker over here, and a pair of sunglasses that we're not sure of the ownership of. But if somebody walks in and gets hit by a stray bullet, how do you lose a sneaker in one location and a hat in the other location?
>
> Well under that theory, if [defendant] runs out the door, then how does his sneaker get up there. If he wants to argue, well, and he didn't because he can't because there's two different locations with the hat and the sneaker. Or maybe he could make an argument in that alternative theory for the location of one of the items coming off, but how do you get around the second? And your going to have all this evidence.
>
> . . .
>
> And if your such an innocent person, why do you give a false name? Wouldn't you want your loved one's to know, I've been hit by a stray bullet.

(ECF No. 10-19 at 31-34.)

The Fifth Amendment privilege against self-incrimination prohibits a prosecutor from commenting on a defendant's failure to testify at trial. *See Griffin v. California,* 380 U.S. 609, 614 (1965). A prosecutor also cannot suggest that a jury can treat defendant's silence as evidence of his guilt. *Baxter v. Palmigiano,* 425 U.S. 308, 319 (1976). A prosecutor is permitted, however, to

9

make reference to a defendant's silence when it is "a fair response to a claim made by defendant or his counsel." *United States v. Robinson*, 485 U.S. 25, 32 (1988). To determine whether the prosecutor's remarks violated Petitioner's Fifth Amendment privilege, the reviewing court must determine whether the comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). However, this inquiry must not be conducted in isolation; rather, the reviewing court should examine the prosecutor's comments within the broader context of the entire trial. *See id*.

When this issue was raised before the PCR court, the court did not reach the merits of Petitioner's claim. The PCR court held that the claim should have been raised on direct appeal, not brought at PCR proceedings, and that regardless, Petitioner had also failed to establish anything more than a bald assertion. (*See* ECF No. 10-23 at 22-23.) The Appellate Division, hearing the case on appeal from the PCR court's decision, did, however, remark upon the merits of Petitioner's claim. The Appellate Division held that the prosecutor had not made improper references to defendant's failure to testify, stating:

> [W]hile the State's closing arguments highlighted clear gaps in defendant's alternative theory, they did not improperly suggest an inference from defendant's failure to testify. Emphasizing such gaps is permissible here, where if the alternative theory were true, defendant would have been able to rebut with argument or evidence beyond his own contrary testimony.

*State v. Miller*, Docket No. A-3048-13T2, 2015 WL 4094448, at *5 (N.J. Super. Ct. App. Div. July 15, 2015).

Having reviewed the record of Petitioner's trial and PCR proceedings, this Court agrees with the Appellate Division's determination. The prosecutor's comments, fairly read, do not directly or indirectly refer to Petitioner's silence or his decision not to testify; nor did the prosecutor directly or inferentially direct his questions to Petitioner or call upon him to answer them. Instead,

the prosecutor simply employed a rhetorical device, posing questions that the jurors should be asking themselves when evaluating the case and suggesting how the evidence answered those questions. The prosecutor merely highlighted the "clear gaps" in Petitioner's alternative theory and reminded the jury that none of the myriad of evidence submitted in the case supported Petitioner's alternative theory.

Moreover, after closing arguments, the trial court delivered the usual instruction to the jury that they were not permitted to draw an adverse inference from Petitioner's silence. (*See* ECF No. 10-7 at 35-36.) A jury is presumed to follow the court's instructions. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000). This presumption can only be overcome by a showing of an "overwhelming probability" that the jury was unable to follow the court's instructions. *See Richardson v. Marsh,* 481 U.S. 200, 208 (1987). Here, nothing about the prosecutor's remarks would have overborne a jury's inclination or ability to follow the judge's instructions; nor does Petitioner argue that they did.

Accordingly, Petitioner's arguments regarding the unconstitutional effect of the prosecutor's remarks are without merit, and the Appellate Division's decision was not contrary to or an unreasonable application of United States Supreme Court precedent. Accordingly, Petitioner is not entitled to relief from his conviction on this ground.

### B. Appellate Counsel was Ineffective For Failing to Raise Fifth Amendment Claim on Direct Appeal

Petitioner's second claim is that his appellate counsel was ineffective for not raising the prosecutor's infringement upon Petitioner's Fifth Amendment rights as an issue on direct appeal. Petitioner advanced this ineffective assistance of appellate counsel claim in his second pro se petition for post-conviction relief. (*See* ECF No. 10-17 at 3.) However, PCR counsel for Petitioner affirmatively abandoned the claim at the PCR hearing, and the PCR court never addressed the

merits of the claim. (*See* ECF No. 10-23 at 10.) Petitioner renewed his claim to the Appellate Division following the PCR court's denial of his petition. (*See* ECF No. 10-28 at 3.) The Appellate Division summarily rejected Petitioner's claim, stating: "As to defendant's remaining arguments, we are convinced from our review of the record that they are without sufficient merit to warrant discussion in a written opinion." *State v. Miller*, Docket No. A-3048-13T2, 2015 WL 4094448, at *11 (N.J. Super. Ct. App. Div. July 8, 2015).

This Court again concurs with the Appellate Division's determination. Petitioner's argument that appellate counsel should have raised a Fifth Amendment violation on direct appeal does not violate clearly established federal law because the Supreme Court has held that appellate counsel has no obligation to raise meritless claims on direct appeal. *See Smith v. Robbins*, 528 U.S. 259, 288 (2000); *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999). Appellate counsel decision regarding which issues to raise on appeal is strategic, and appellate counsel is not required to raise every possible non-frivolous issue. *Smith*, 528 U.S. at 288 (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). The chief component of effective appellate advocacy is the winnowing out of weaker claims in favor of those with a greater chance of success. *See Jones*, 463 U.S. at 753.

Significantly, even if Petitioner could raise an ineffective assistance of appellate counsel claim, he would still be unable to meet the two-prong ineffective assistance of counsel test laid out in *Strickland v. Washington,* 466 U.S. 668 (1984). The *Strickland* test requires that a petitioner prove: 1) that counsel's performance was deficient; and 2) that petitioner was prejudiced by counsel's deficiency. *See id.* at 687. A petitioner demonstrates prejudice by establishing that, "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Here, Petitioner cannot meet the second prong because this Court has already determined that Petitioner's claim that the prosecutor violated his

Fifth Amendment rights is without merit. Therefore, Petitioner could not have been prejudiced by appellate counsel's failure to bring the claim on appeal because there was not a reasonable probability that claim would have succeeded. Accordingly, Petitioner is not entitled to relief from his conviction on this ground.

### C. Ineffective Assistance of PCR Counsel

In Petitioner's third claim, he argues that his PCR counsel was ineffective for affirmatively abandoning his ineffective assistance of appellate counsel claim during the PCR hearing. As discussed previously, Petitioner initially raised the claim of ineffective assistance of appellate counsel in his pro se petition for post-conviction relief. However, at the PCR hearing, Petitioner's PCR counsel incorrectly informed the court that Petitioner was no longer pursuing that argument.

> THE COURT: Okay. It was unclear to me from the paperwork, -- is he also alleging ineffective assistance of appellate counsel?
> MR. HASKETH [PCR Counsel]: Judge, --
> THE COURT: Because I seem to think I read that someplace, but then I didn't see an argument.
> MR. HASKETH: -- I think that was on his first, that might have been on his first PCR but Judge --
> THE COURT: So that's not a part of this PCR.
> MR. HASKETH: No. Judge Scully had us amend it and we didn't add that in.
> THE COURT: Okay. So he's not pursuing that now. Because if he is I have to address it.
> MR. HASKETH: No, Judge.

(ECF No. 10-23 at 10.)

Traditionally, "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i) (alteration in original); *see also Coleman v. Thompson*, 501 U.S. 722, 752-73 (1991); *Taylor v. Horn*, 504 F.3d 416, 437 n.17 (3d Cir. 2007). However,

the Supreme Court did provide a narrow except to that rule; if a petitioner can demonstrate that PCR counsel was constitutionally ineffective in failing to raise a claim of ineffective assistance of trial counsel on PCR review, the federal court hearing his § 2254 habeas petition may review that claim *de novo*. *See Martinez v. Ryan,* 132 S. Ct. 1309, 1315 (2012). Yet significantly, the Supreme Court subsequently declined to extend the rule to include claims of ineffective assistance of appellate counsel. *See Davila v. Davis,* 137 S. Ct. 2058 (2017).

Here, Petitioner is attempting to establish that PCR counsel failed to raise claims of ineffective assistance of appellate counsel, the exact type of claim prohibited by *Davila. See Davila*, 137 S. Ct. at 2065. Accordingly, Petitioner is not entitled to relief from his conviction on this ground.

### D. Ineffective Assistance of PCR Appellate Counsel

In Petitioner's fourth claim, he asserts that PCR appellate counsel was ineffective for not raising the issue of PCR counsel's ineffectiveness. However, the Supreme Court has expressly stated that the narrow holding of *Martinez* does not apply to, "attorney errors in other kinds of proceedings, including <u>appeals from initial-review collateral proceedings</u>, second or successive proceedings, and petitions for discretionary review in a State's appellate courts." *Martinez*, 132 S. Ct. at 1320 (emphasis added). Petitioner is again attempting to bring a claim expressly barred by the Supreme Court. Accordingly, Petitioner is not entitled to relief from his conviction on this ground.

### E. Ineffective Assistance of Trial Counsel

In Petitioner's fifth and sixth claims, he asserts that trial counsel was ineffective for failing to interview Raymond Lopez prior to trial and relatedly, that trial counsel was ineffective for not eliciting exculpatory statements from Mr. Lopez on the witness stand. Petitioner alleges that if trial

14

counsel had questioned Mr. Lopez, trial counsel would have discovered that, after being shot, Petitioner told Mr. Lopez, "they was fighting" and "they shot me." Petitioner contends, if discovered, these statements would have been successfully introduced at trial. Petitioner raised these interrelated claims during his PCR proceedings and renewed them before the Appellate Division when his PCR was denied. In reviewing the claims, the Appellate Division held that, "[s]etting aside whether or not defendant could have introduced his statements to [Raymond Lopez] under a hearsay exception, we discern no reasonable probability that admission of the statements would have produced a different result." *State v. Miller,* Docket No. A-3048-13T2, 2015 WL 4094448, at *10 (N.J. Super. Ct. App. Div. July 8, 2015). In reaching this holding, the Appellate Division reasoned that Petitioner had not been deprived of the evidence because the statements came to light before Petitioner's case-in-chief, that the statements lacked credibility in light of Petitioner's overwhelming guilt, and that questioning Mr. Lopez about Petitioner's hearsay statements could have opened the door to facts about Petitioner's credibility, his prior record, and any contradictory statements he may have provided. *See id.* at *10-11. Following the Appellate Division's denial of his appeal, Petitioner sought certification to the Supreme Court but was denied. *See State v. Miller*, 124 A.3d 240 (N.J. 2015).

As previously discussed, the standard which applies to ineffective assistance of trial counsel claims is well established. The *Strickland* test requires a petitioner to prove: 1) counsel's performance was deficient; and 2) petitioner was prejudiced by counsel's deficiency. *See Strickland,* 466 U.S. at 687. Counsel has a duty to make reasonable investigations in a criminal defendant's case. *See id.* at 690-91.

Here, Petitioner is unable to demonstrate that he was prejudiced by trial counsel's alleged deficiency in failing to investigate Mr. Lopez. As the Appellate Division aptly pointed out,

although the evidence came late, Mr. Lopez did inform defense counsel about the statements before the start of Petitioner's case-in-chief. (*See* ECF No. 1-1 at 10.) Petitioner was still afforded the opportunity for a hearing on the admissibility of the hearsay statements he allegedly made to Mr. Lopez, and Petitioner would have been provided with the ability to elicit these statements from Mr. Lopez if they had been deemed admissible by the trial judge. Thus, although the last-minute exculpatory statements were discovered late, Petitioner was afforded the same opportunity to have them introduced at trial as he would have been if the statements had come to light earlier in the case.

Moreover, it is clearly possible that after an admissibility hearing, the trial judge would have ruled that the statements were not admissible under any hearsay exception. The trial judge even remarked upon this possibility during trial.

> THE COURT: So I'm not just going to let you just call him to the stand until we have that 104 hearing.
> MR. TULLY [defense counsel]: Thank you, Judge. Given all that and I know your Honor needs to hear all that to make his -- make your ruling. I don't know under what exception that defendant's statement would come under. I mean just 47 minutes had passed between the time of the incident when he goes to --
> THE COURT: That's another issue.
> MR. TULLY: -- Lopez's back yard.
> THE COURT: It's a hearsay statement.
> MR TULLY: Well obviously, Judge, it's an excited utterance. It also could be considered a dying declaration.
> THE COURT: <u>Well no, not obviously it is -- it's not obviously that it is an excited utterance</u>. You may offer it as an excited utterance and we'll have to have a ruling on that as to the excited nature of the statement. If there was time to reflect, et cetera. That's why we're going to need to have a 104 hearing.

(ECF No. 10-6 at 59 (emphasis added).)

16

Finally, Petitioner has failed to demonstrate that even if the exculpatory statements had been introduced at trial that it would have produced a different result. While a petitioner is not required to show that counsel's deficient performance "more likely than not altered the outcome of the case," he must at least show a "probability sufficient to undermine confidence in the outcome." *See Strickland,* 466 U.S. at 693-94. "[T]he effect of counsel's inadequate performance must be evaluated in light of the totality of the evidence at trial: 'a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Grant v. Lockett,* 709 F.3d 224, 235 (3d Cir. 2013) (quoting *Strickland*, 466 U.S. at 696). Here, the State presented "overwhelming evidence" of Petitioner's guilt. *See State v. Miller*, Docket No. A-3048-13T2, 2015 WL 4094448, at *10 (N.J. Super. Ct. App. Div. July 8, 2015). This fact led the Appellate Division to conclude that the hearsay statements would have "clearly lacked credibility" if admitted. *Id.* This Court concurs. While Petitioner's defense theory was that he was merely an innocent bystander shot by the real perpetrator of the crime, his theory did not explain why he was discovered wearing the same clothing that the victim stated the perpetrator had worn, why he had a wound on his hand where the victim stated that he had bitten the perpetrator, and why Petitioner initially provided a false name to police. Moreover, if Mr. Lopez had testified to the exculpatory statements, the State could have sought to expose Mr. Lopez's bias by eliciting the criminal nature of Mr. Lopez's son's relationship with Petitioner, a fact that would have further damaged the credibility of the statements. *See Miller,* 2015 WL 4094448, at *1 n.1. In light of all this information, Petitioner cannot establish that if the exculpatory statements had been elicited at trial that there is a reasonably probability that the result of the proceeding would have been different.

17

For all the foregoing reasons, Petitioner is not entitled to relief from his conviction on either of his ineffective assistance of trial counsel claims.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because jurists of reason would not disagree with this Court's conclusion that Petitioner has failed to make a substantial showing of the denial of a constitutional right insomuch as Petitioner's claims are without merit, Petitioner's habeas petition is inadequate to proceed further and therefore, a certificate of appealability shall not issue.

## V. CONCLUSION

For the reasons stated above, the Petitioner's habeas petition is **DENIED** and a certificate of appealability shall not issue.

DATED: April 22, 2019

*/s/Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
UNITED STATES DISTRICT JUDGE